## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL DUFFY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 11-13-SLR-SRF |
| | ) |
| M. MANGE, KENT COUNTY | ) |
| DELAWARE, P. BROOKS BANTA and | ) |
| KENT LEVY COURT INC., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Plaintiff Michael Duffy ("Duffy" or "plaintiff"), who proceeds pro se,[1] filed this lawsuit

on January 4, 2011, alleging violations of the Takings Clause of the Fifth Amendment.[2]  (D.I. 1)

Plaintiff subsequently amended the complaint to add a claim under the Fourth Amendment

search and seizure clause.  (D.I. 44)  Presently before the court are the following motions:  the

motion for summary judgment of defendants Kent County Levy Court, Commissioner P. Brooks

Banta, and Michael J. Petit de Mange (collectively, "defendants") (D.I. 53), and plaintiff's

motion to strike (D.I. 60) and motion to compel discovery (D.I. 63).  For the reasons set forth

below, I recommend that the court deny plaintiff's motions and grant defendant's motion for

summary judgment.

---

[1] On August 10, 2011, the court entered an order for the Clerk of Court to attempt to refer representation of plaintiff to a member of the Federal Civil Panel.  (D.I. 16)  Plaintiff was represented by an attorney until May 9, 2013, when the court revoked the order appointing counsel.  (D.I. 28)

[2] Plaintiff alleged additional causes of action, which were dismissed as frivolous on May 3, 2011.  (D.I. 7)

## II.   BACKGROUND[3]

On February 10, 2001, plaintiff purchased property located at 3028 Kitts Hummock

Road, Kent County, Delaware, for a sum of $500.00. (D.I. 54, Ex. C at Duffy 1213-15)

However, plaintiff did not record a deed or bill of sale for the property. (*Id.* at Duffy 1200-02)

In May 2008, a storm damaged plaintiff's property. Following the storm, inspectors from the

Division of Inspections and Enforcement of the Kent County Department of Planning Services

inspected a number of parcels in the communities affected by the storm, including plaintiff's

property. (*Id.* at ¶ 2) One of the structures on plaintiff's property was condemned as unsafe in

May 2008. (*Id.* at Duffy 1188)

By letter dated June 16, 2008, the Department of Planning Services notified the record

owners of the property that the property was condemned, and gave the record owners ninety days

to comply with the condemnation order. (*Id.* at Duffy 1184-86) After the letter was returned as

---

[3] The facts discussed herein are derived from the evidence on the record supplied by defendant unless otherwise noted. The facts are either undisputed, or plaintiff has failed to properly support his assertions. *See* Fed. R. Civ. P. 56(c) & (e). Plaintiff has not cited to particular parts of materials in the record in his answering brief. He admits receiving defendant's submission and has repeatedly indicated that he has reviewed and continues to review defendant's submission. (D.I. 59, 60)

Plaintiff was given ample time to develop a record of his own. Plaintiff was appointed counsel on September 2, 2011 (D.I. 17), and the case was referred to the undersigned magistrate judge on May 2, 2012 (D.I. 23). Appointed counsel suggested a tentative plan for moving forward with additional discovery in March 2013 (D.I. 27 at 13:5 – 16:2), but the attorney-client relationship deteriorated and the order appointing counsel was revoked on May 9, 2013 (D.I. 28). On the same date, the court entered a scheduling order, setting a discovery deadline of August 12, 2013. (D.I. 29) Plaintiff also made requests for information from defendant prior to the commencement of litigation, but then refused to accept the requested information when it was provided to him. (D.I. 54, Ex. C at Duffy 1086)

Plaintiff was also given ample time to respond to defendant's motion for summary judgment. Defendant filed the motion for summary judgment on September 11, 2013. (D.I. 53) Plaintiff's deadline to respond was extended to October 18, 2013. (D.I. 58) Between September 11, 2013 and October 18, 2013, plaintiff submitted five filings. (D.I. 59, 60, 61, 62, 63) Plaintiff's multiple filings within this five week period suggest that he is capable of filing a timely response.

2

undeliverable, defendants posted the notice on the structures located at the property. (*Id.* at Duffy 1182-83) Plaintiff contacted defendants on June 24, 2008 with a series of questions about the procedure. (*Id.* at Duffy 1177-80) On June 30, 2008, defendants attempted to explain the process to plaintiff and provide him with written information, but plaintiff declined to accept the information offered to him. (*Id.* at Duffy 1175)

Plaintiff identified himself as disabled and requested assistance under the ADA on September 9, 2008. (*Id.* at Duffy 1162) Defendants informed plaintiff that he would be granted an extension of time for correction of violations at the property if he recorded a deed or bill of sale by the deadline of October 3, 2008. (*Id.* at Duffy 1156, 1149) The deed transferring legal ownership of the property to plaintiff was recorded on October 3, 2008. (*Id.* at Duffy 1129-42)

On October 2, 2008, an inspection of the property was made at plaintiff's request. (*Id.* at Duffy 1108) The inspection revealed that an accessory structure on the property was also unsafe, and the building was condemned. (*Id.*) Plaintiff was given ninety calendar days to comply with the condemnation order. (*Id.* at Duffy 1109)

Beginning in October 2008, a volunteer architect assisted plaintiff in navigating the demolition and rebuilding process. (*Id.* at Duffy 1113, 1093 ¶ 3, 1006-09, 987-95) On October 23, 2008, defendants met with plaintiff to explain the demolition and rehabilitation process. (*Id.* at Duffy 1030-35) Defendants outlined the steps needed to apply for a demolition permit or a temporary shelter permit and also discussed what would be needed to request an extension of the demolition deadline. (*Id.*) Defendants also offered to assign a staff member to help plaintiff navigate the process in response to his ADA accommodation request. (*Id.* at Duffy 1093-94) Plaintiff was advised that if he took no action within ninety days of the condemnation order,

3

defendants would proceed with the demolition and place a lien on the property to cover the cost. (*Id.*)

Also in October 2008, plaintiff submitted a request for a dumpster. (*Id.* at Duffy 1143) The request was denied because defendants do not provide county-funded dumpsters for individual property owners. (*Id.* at Duffy 1093) Defendants had provided two dumpsters in September 2008 for a planned community flood clean up weekend, but defendants do not provide county-funded dumpsters to individual property owners. (*Id.* at ¶ 9) Plaintiff has presented no evidence indicating that county-funded dumpsters were provided to individual homeowners.

Plaintiff continued to communicate with defendants via email during November 2008. (*Id.* at Duffy 1021-25) Defendants reiterated that they would assist plaintiff with the permitting process, but an extension of the demolition deadline would not be granted unless significant progress toward rehabilitation or demolition was shown. (*Id.* at Duffy 1021) Plaintiff was notified that he had until February 7, 2009 to comply with the condemnation notice. (*Id.*)

On January 13, 2009, plaintiff initiated a civil action against defendant in the Court of Chancery, requesting injunctive relief to preclude defendant from demolishing the structures. On January 20, 2009, plaintiff's architect recommended demolishing and rebuilding the structures, and asked defendants how to apply for a demolition permit. (*Id.* at Duffy 988-95) Defendants determined that plaintiff had taken some steps towards compliance with the condemnation order and suspended the February 7, 2009 compliance deadline. (*Id.* at Duffy 987)

Plaintiff made no further progress towards obtaining a demolition permit until defendants issued another notice of intent to demolish the structures as of June 23, 2009. Plaintiff applied for and was granted a demolition permit on July 6, 2009, which gave him thirty days to complete

4

demolition. (*Id.* at Duffy 856-57) During the demolition period, volunteers from plaintiff's church[4] demolished the front structure and a portion of the rear structure, but did not complete demolition of the rear structure. (*Id.* at ¶ 18) When contacted by defendants, the volunteers indicated that they did not plan to complete the demolition.

Defendants provided notice of intent to proceed with the remaining demolition in the ongoing Court of Chancery litigation, and caused the remaining structure to be demolished in early December 2009 after soliciting bids from contractors. (*Id.* at Duffy 758) The demolition cost $1,400, and that amount has become a lien on the property. (*Id.* at Duffy 756) Plaintiff did not submit an application for a building permit or a temporary shelter permit. (*Id.* at Duffy 943, 1011)

Plaintiff initiated the present case on January 4, 2011, and filed an amended complaint on June 28, 2013. (D.I. 1, 44) The complaints, filed pursuant to the Fourth and Fifth Amendments, allege that defendants caused a taking of property without compensation, and that the condemnation and demolition of his property has resulted in an unlawful search and seizure.

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986)). Pursuant to Rule

---

[4] The record suggests that the relationship between plaintiff and the volunteer architect

56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir.1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris,* 550 U.S. 372, 380 (2007); *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. at 322.

---

was terminated following the architect's recommendation that the structures be demolished.

## B.    Analysis[5]

### 1.    Fifth Amendment Takings Clause

The Takings Clause of the Fifth Amendment provides that "private property [shall not]

be taken for public use, without just compensation." U.S. Const. amend. V; *see also Nat'l*

*Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013). A physical taking

occurs, and compensation is owed, when the government authorizes a physical occupation of the

property or takes title to the property. *Brace v. United States*, 72 Fed. Cl. 337, 346 (Fed. Cl.

2006). The government must pay just compensation for such takings unless "background

principles of nuisance and property law independently restrict the owner's intended use of the

property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (quoting *Lucas v. S.C.*

*Coastal Council*, 505 U.S. 1003, 1032 (1992) ("[H]armful or noxious uses of property may be

proscribed by government regulation without the requirement of compensation.")). For instance,

orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-

damaged buildings, and other circumstances implicating public safety concerns are permissible

exercises of the police power. In such circumstances, compensation to the affected individuals is

not warranted. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302,

335 (2002).

In the present case, defendants have shown that plaintiff still holds legal title to the

property. (D.I. 54, Ex. D) Defendants have not physically taken the property because

---

[5] Because plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint,
"however inartfully pleaded, must be held to less stringent standards that formal pleadings
drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). However,
"[m]erely because a non-moving party is proceeding *pro se* does not relieve him of the
obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *See*
*Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000). The Rule 56(e) standard
was highlighted for plaintiff in this court's order dated September 12, 2013. (D.I. 55)

7

defendants do not hold title to the property. *See Nat'l Amusements Inc.*, 716 F.3d at 63. To the extent plaintiff alleges that defendants effected a taking by way of the demolition and the lien, this argument fails because defendants have shown that the condemnation of the structures on the property was necessary to protect the public safety. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) ("Long ago it was recognized that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' . . . and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (internal citation omitted). Specifically, defendants have produced evidence showing that both defendants' inspectors and plaintiff's own volunteer architect recommended demolition of the structures, and the Court of Chancery allowed demolition of the structures to go forward over plaintiff's request for a restraining order. (D.I. 54, Ex. C at Duffy 988-95, 1108, 1184-86) Plaintiff has produced no evidence to create a genuine issue of material fact as to whether the structures were safe. For these reasons, I recommend that the court grant summary judgment with respect to plaintiff's Takings Clause claim.

### 2. Fourth Amendment Search and Seizure

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV. To establish a Fourth Amendment violation, plaintiff must prove that defendants seized plaintiff's property and the seizure was unreasonable. A seizure occurs when there is some meaningful interference with an individual's possessory interest in property. *Soldal v. Cook County, Ill*, 506 U.S. 56, 60 (1992). The demolition of a residence constitutes a seizure under the Fourth Amendment. *See Freeman v. City of Dallas*, 242 F.3d

8

642, 647-48 (5th Cir. 2001); *Debari v. Town of Middleton*, 9 F. Supp. 2d 156, 161 (N.D.N.Y. 1998).

To determine the reasonableness of the seizure, the court must carefully balance governmental versus private interests. *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000). In the context of a nuisance abatement, the government does not violate the Fourth Amendment unless it carries out the seizure in a manner that is unreasonable. Factors considered in the reasonableness analysis include the danger posed by a damaged building to public safety, the notice given to the owner, and the recourse given to the owner to challenge any action taken by the government. *Manganaro v. Reap*, 29 F. App'x 859, 861 (3d Cir. 2002). If a building is condemned for the danger it poses, proper notice is given to the owner, and adequate recourse is given for plaintiff to challenge any action taken by the government, demolishing the building cannot be ruled unreasonable as a matter of law. *Id.* (citing *Freeman v. City of Dallas*, 242 F.3d 642, 652-55 (5th Cir. 2001)).

I recommend that the court grant defendants' motion for summary judgment with respect to plaintiff's Fourth Amendment claims. For the reasons previously stated at § III.B.1, *supra*, defendants have demonstrated that the structures on plaintiff's property posed a danger to public safety. Defendants have also shown that plaintiff was given adequate notice of the condemnation and communicated regularly with defendants regarding the demolition and permitting processes. (D.I. 54, Ex. C at Duffy 1175-83) The record also reflects that plaintiff had multiple opportunities to challenge the actions taken by defendants. Specifically, defendants extended plaintiff's compliance deadline multiple times, ultimately completing the demolition more than a year after demolition was originally scheduled to occur. (*Id.* at Duffy 758, 987, 1021, 1109) During this time, defendants repeatedly met and communicated with plaintiff to

9

assist plaintiff in the process, and plaintiff initiated an action in the Court of Chancery to obtain an injunction against defendants.  No evidence on the record suggests that plaintiff did not have an opportunity to challenge the condemnation orders.

In light of the undersigned magistrate judge's recommendation regarding plaintiff's causes of action under the Fourth and Fifth Amendments, the court need not reach the issue of whether individual defendants P. Brooks Banta and Michael J. Petit de Mange are immune from suit under the doctrine of qualified immunity.

## IV.    PLAINTIFF'S MOTIONS AND OTHER FILINGS

Plaintiff has filed a series of motions and other filings raising a broad spectrum of issues. Many of plaintiff's allegations and requests for relief are moot in light of the court's recommendation on summary judgment.  Moreover, a number of the issues raised by plaintiff have been addressed in previous court orders and need not be revisited by the court.[6]  Plaintiff seeks to prevent or delay consideration of defendants' motion for summary judgment by taking issue with the fairness of the discovery process.  However, the court has addressed such concerns *supra* at footnote 3.

## V.    CONCLUSION

For the reasons stated above, I recommend that the court DENY plaintiff's motions (D.I. 60, 63) and GRANT defendant's motion for summary judgment (D.I. 53).  As a result, plaintiff's action should be dismissed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

---

[6] Issues previously addressed by the court include, but are not limited to, revocation of

Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The objections and responses to the objections are limited to five (5) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available at http://www.ded.uscourts.gov.

Dated: February 11, 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

the order appointing legal counsel (D.I. 28, 34) and the inadequacy of discovery (D.I. 56).